UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

Plaintiff,

-against-

MICHAEL A. GOWL, JR., individually; MICHAEL J. WADE, individually; NEW STATE CAPITAL PARTNERS LLC; NS PRC INVESTMENT LLC; PATUXENT R&C ACQUISITION, LLC; PATUXENT INTERMEDIATE LLC; PATUXENT ROOFING & CONTRACTING, LLC d/b/a PAX SERVICES GROUP; LEGACY ACQUISITION FUND, LLC; PRC SELLER HOLDINGS, INC.; PRC SELLER INTERMEDIATE LLC; and COASTAL POOLS, LLC.

Defendants.

Civil Action No.:

**1:25-cv-09799**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM AND FOR A PROTECTIVE ORDER**

**JOSEPH & NORINSBERG, LLC**
Bennitta Joseph, Esq.
*Attorneys for Plaintiff*
825 3rd Ave., Floor #2100
New York, New York 10022

**TABLE OF CONTENTS**


**TABLE OF AUTHORITIES** ........ 2

**PRELIMINARY STATEMENT** ........ 4

**STANDARD OF REVIEW** ........ 6

**ARGUMENT** ........ 7

**I.** ............ **PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY SHOULD BE GRANTED** ........ 7

**A. Plaintiff's Case Involves Matters That Are Highly Sensitive And Of A Personal Nature** ........ 7

**B. Identification Poses A Risk Of Severe Retaliatory Harm To Plaintiff And Would Significantly Worsen Her Fragile Psychological Condition** ........ 9

**C. Plaintiff Is Particularly Vulnerable To The Possible Harms Of Disclosure** ........ 11

**D. Defendants Will Not Suffer Prejudice By Allowing Plaintiff To Proceed Under A Pseudonym** ........ 13

**E. There Is No Public Interest Requiring Disclosure** ........ 15

**CONCLUSION** ........ 17

# TABLE OF AUTHORITIES

**CASES**

*Doe v. AMDA, Inc.*,
No. 16-cv-101 (AJN), 2016 U.S. Dist. LEXIS 23001 (S.D.N.Y. Feb. 25, 2016) ................ 6, 8, 10

*Doe v. Columbia Univ. in the City of N.Y.*,
22-cv-10340 (AT), 2023 U.S. Dist. LEXIS 640 (S.D.N.Y. Jan. 3, 2023) ................................ 6, 8

*Doe v. Evans*,
202 F.R.D. 173 (E.D. Pa. 2001) ......................................................................................... 14

*Doe v. Gong Xi Fa Cai, Inc.*,
2019 U.S. Dist. LEXIS 114919 (S.D.N.Y. Jul. 10, 2019) ......................................................... 13

*Doe No. 2 v. Kolko*,
06-cv-2096 (SLT) (MDG), 242 F.R.D. 193 (E.D.N.Y. 2006) ................................ 5, 6, 10, 13, 14

*Doe v. Smith*,
105 F. Supp. 2d 40 (E.D.N.Y. 1999) ...................................................................... 11, 13

*Doe v. Solera Capital, LLC*,
18-cv-1769 (ER), 2019 U.S. Dist. LEXIS 55860 (S.D.N.Y. Mar. 31, 2019) ............................. 11

*Doe v. St. Vincent's Servs.*,
20-cv-6215 (WFK) (RML), 2021 U.S. Dist. LEXIS 256918 (E.D.N.Y. Sept. 27, 2021) . 7, 12, 14

*Doe v. United Servs. Life Ins. Co.*,
123 F.R.D. 437 (S.D.N.Y. 1988) ..................................................................................... 6, 13

*Doe v. Vassar College*,
19-cv-09601 (NSR), 2019 U.S. Dist. LEXIS 196933 (S.D.N.Y. Nov. 13, 2019) ..................... 6, 8

*EW v. New York Blood Ctr.*,
02-cv-1067 (ERK) (MDG), 213 F.R.D. 108 (E.D.N.Y. 2003) .......................................... 5, 7, 13

*Roe v. Ingraham*,
364 F. Supp. 536 (S.D.N.Y. 1973) ......................................................................................... 9

*Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185 (2d Cir. 2008) ................................................................................................. 5

**STATUTES**

N.Y. Civil Rights Law § 50-b ......................................................................................... 14

**RULES**

Federal Rule of Civil Procedure 5.2(e) .......... 3

Federal Rule of Civil Procedure 10(a) .......... 5

**OTHER AUTHORITIES**

1991 McKinney's Sessions Laws of N.Y. .......... 14

National Institute on Drug Abuse, MDMA (Ecstasy/Molly), https://nida.nih.gov/research-topics/mdma-ecstasy-molly#what (last visited Nov. 21, 2025) ...... 8

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 5.2(e), Plaintiff Jane Doe ("Plaintiff" or "Jane Doe"), by and through her undersigned counsel, Joseph & Norinsberg, LLC, respectfully submits this Memorandum of Law in support of Plaintiff's request for leave to proceed under a pseudonym to protect her identity from public disclosure. Plaintiff also moves this Court for an Order directing Defendants MICHAEL A. GOWL, JR. ("Gowl" or “Defendant Gowl”), individually; MICHAEL J. WADE ("Wade" or “Defendant Wade”), individually; NEW STATE CAPITAL PARTNERS LLC (“New State”); NS PRC INVESTMENT LLC (“NS PRC Investment”); PATUXENT R&C ACQUISITION, LLC (“Patuxent Acquisition”); PATUXENT INTERMEDIATE LLC (“Patuxent Intermediate”); PATUXENT ROOFING & CONTRACTING, LLC d/b/a PAX SERVICES GROUP (“PAX”); LEGACY ACQUISITION FUND, LLC (“Legacy”); PRC SELLER HOLDINGS, INC (“PRC Seller Holdings”); PRC SELLER INTERMEDIATE LLC (“PRC Seller Intermediate”); and COASTAL POOLS, LLC ("Coastal Pools"); (collectively, "Defendants") to maintain the confidentiality of Plaintiff's identity by using only her pseudonym in all their filings, including all exhibits in which Plaintiff's name or other identifying information appears.

As a threshold matter, Plaintiff should be allowed to proceed anonymously because this litigation involves matters that are highly sensitive and of a personal nature. Plaintiff is a victim and survivor of repeated sexual harassment, sexual assault, and retaliation perpetrated by Defendant Gowl, Executive Chairman of PAX and Defendant Wade Chief Executive Officer of PAX, and the co-defendants who enabled their conduct or turned a blind eye to it. From December 2023 through September 2024, Gowl systematically subjected Plaintiff to sexual abuse, manipulation, and control, including drugging and sexually assaulting her on multiple occasions. Plaintiff’s Complaint (hereinafter “Compl.”) at ¶¶ 1-11. He created what he called a "24/7

mentality," contacting her from early morning until late at night with demands that blurred every professional boundary. Compl. at ¶¶ 4, 51.

Plaintiff's motion to proceed anonymously is further supported by the substantial risk that identification poses to her mental health. As a direct result of Defendants' actions, Plaintiff has been formally diagnosed with Chronic Post-Traumatic Stress Disorder and Severe Major Depressive Disorder. Plaintiff continues to suffer from weight gain, hair loss, chronic insomnia, anxiety, and persistent emotional distress, all consistent with severe trauma. Compl. at ¶ 289. These conditions are supported by clinical evaluations and sworn declaration from her treating therapist, Dana Legrande, a Licensed Clinical Social Worker with an "R" psychotherapy privilege in New York and a Master of Health Care Administration and a CASAC-G credential. *See* Declaration of Dana Legrande at ¶ 1 (hereinafter "Legrande Decl.").

Additionally, one of the injuries Plaintiff litigates against would be directly incurred as a result of the disclosure of her identity. When Plaintiff refused to sign a severance agreement waiving claims against Gowl personally, Gowl unleashed a campaign of harassment and terror that included hiring a retired FBI agent to illegally impersonate active federal law enforcement to intimidate Plaintiff's friends and family in an effort to intimidate potential witnesses and silence her. Compl. at ¶¶ 12, 260-262. Gowl's agents have also had her job offers revoked through interference with prospective employers. Compl. at ¶¶ 265-266. Plaintiff should not have to disclose her identity and subject herself to further retaliation—one of the very things she is litigating against—to seek justice.

Finally, allowing Plaintiff to proceed anonymously will not prejudice Defendants and serves important public interests. Defendants already know Plaintiff's identity, and a protective order may be used to allow them to share her name with third parties under confidentiality

protections in order to conduct discovery. Moreover, the public's interest in the litigation is not furthered by requiring Plaintiff to disclose her identity. New York public policy supports permitting sexual assault and harassment victims to maintain their anonymity in order to seek justice.

## STANDARD OF REVIEW

Although Federal Rule of Civil Procedure 10(a) ordinarily requires that "[t]he title of [a] complaint must name all parties" to an action, it is well established that courts have the discretion to protect plaintiffs' privacy by permitting them to pursue their claims anonymously. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008); *Doe No. 2 v. Kolko*, 06-cv-2096 (SLT) (MDG), 242 F.R.D. 193, 195 (E.D.N.Y. 2006) ("Whether to allow a plaintiff to proceed anonymously is within the court's discretion."); *EW v. New York Blood Ctr.*, 02-cv-1067 (ERK) (MDG), 213 F.R.D. 108, 110 (E.D.N.Y. 2003).

Courts in the Second circuit permit a plaintiff to proceed anonymously where, as here, the balancing of "the plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant" weighs in favor of anonymity. *Sealed Plaintiff*, 537 F.3d at 189-90. In balancing these interests, courts consider several factors, including the following "non-exhaustive" list:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated

> by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* (internal quotation marks, citations, and alterations omitted). Courts are required only to "balance[] the interests at stake" and are not required to list each of the factors or "use any particular formulation" to reach its determination. *Id.* at 191, n.4. Here, the relevant factors weigh in favor of permitting Plaintiff to proceed anonymously.

## ARGUMENT

### I. PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY SHOULD BE GRANTED

#### A. Plaintiff's Case Involves Matters That Are Highly Sensitive And Of A Personal Nature

Plaintiff's case involves both sexual harassment and sexual assault, matters that courts have consistently recognized as highly sensitive and personal. *See, e.g, Doe v. AMDA, Inc.*, No. 16-cv-101 (AJN), 2016 U.S. Dist. LEXIS 23001, at *3 (S.D.N.Y. Feb. 25, 2016) (granting anonymity based on the "highly sensitive and ... personal nature" of sexual assault allegations); *Doe v. Columbia Univ. in the City of N.Y.*, 22-cv-10340 (AT), 2023 U.S. Dist. LEXIS 640, at *3 (S.D.N.Y. Jan. 3, 2023) (same); *Doe v. Vassar College*, 19-cv-09601 (NSR), 2019 U.S. Dist. LEXIS 196933, at *4-5 (S.D.N.Y. Nov. 13, 2019) (same); *Doe No. 2*, 242 F.R.D. at 196 (describing sexual assault claims as matters "of the utmost intimacy").[1] Indeed, courts in the Second Circuit have held that "sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe No. 2*, 242 F.R.D. at 195.

[1] *See also Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (collecting cases discussing the privacy interests that have warranted the use of fictitious names, including abortion and mental illness).

Here, Defendant Gowl systematically subjected Plaintiff to sexual harassment, manipulation, and assault over the course of nearly ten months. On January 30, 2024, during a supposed "career advancement meeting" at 9:00 p.m. at Nobu in New York City, Gowl drugged Plaintiff and attempted to sexually assault her in his hotel room. Compl. at ¶¶ 133-163. On February 15, 2024, at his Pinecrest, Florida home, Gowl again drugged Plaintiff and sexually assaulted her, choking her while she struggled to breathe and whispering "I don't want you to hate me. I don't want you to be mad." Compl. at ¶¶ 164-175. Gowl later admitted that choking was "his favorite thing" and that she was "quieter and sweeter when half-conscious," confirming his arousal from control and paralysis. Compl. at ¶ 175.

Second, courts have also granted anonymity where the alleged misconduct was tied to a highly sensitive health condition, such as a sexually transmitted disease, the disclosure of which might subject the plaintiff to public stigmatization. *See, e.g., Doe v. St. Vincent's Servs.*, 20-cv-6215 (WFK) (RML), 2021 U.S. Dist. LEXIS 256918, at *6-8 (E.D.N.Y. Sept. 27, 2021) (granting anonymity and noting that people living with sexually transmitted diseases "are highly stigmatized"), citing *EW*, 213 F.R.D. at 112 ("questioning relating to plaintiff's method of contracting HBV will inevitably involve issues relating to her sexual conduct of 'great intimacy'"). Here, Plaintiff began experiencing physical symptoms following the assault. Gowl, knowing he had not used protection, handed her cash and ordered her to get tested for sexually transmitted diseases and pregnancy. Compl. at ¶ 178. In a display of callous hypocrisy, the self-professed "devout Catholic" even instructed her to "terminate the pregnancy" if the test was positive. Compl. at ¶ 178. Plaintiff was subsequently diagnosed with acute vaginosis. Compl. at ¶ 181. The stigma of sexual offenses and sexually transmitted diseases place Jane Doe in a uniquely vulnerable situation, supporting anonymity.

The systematic and predatory nature of Gowl's conduct demonstrates the calculated depravity underlying this case. Rather than isolated incidents of poor judgment, the evidence reveals a deliberate pattern of exploitation. Gowl admitted that he "took my chance because I don't know when I'll be alone with you again," revealing premeditation rather than spontaneous misconduct. Compl. at ¶ 205. His conduct included a pattern of drugging Plaintiff, boasting about his prior experience dealing MDMA[2] and his knowledge of drugs' effects on lowering inhibitions. Compl. at ¶ 89. Most disturbingly, Gowl admitted his preference for victims who were "quieter and sweeter when half-conscious" and that "choking was his favorite thing." Compl. at ¶ 175.

The depravity reached its nadir when one assault occurred "in his marital bed, with his newly born infant's crib just a few feet away." Compl. at ¶ 173. This conduct transcends ordinary workplace sexual harassment and constitutes predatory criminal behavior that courts have consistently recognized as deserving the highest protection for victims seeking anonymity. *See, e.g., Doe v. AMDA, Inc.*, 2016 U.S. Dist. LEXIS 23001, at *3; *Doe v. Columbia Univ. in the City of N.Y.*, 2023 U.S. Dist. LEXIS 640, at *3; *Doe v. Vassar College*, 2019 U.S. Dist. LEXIS 196933, at *4-5.

### B. <u>Identification Poses A Risk Of Severe Retaliatory Harm To Plaintiff And Would Significantly Worsen Her Fragile Psychological Condition</u>

The post-termination retaliation campaign orchestrated by Defendants represents one of the most sophisticated and extensive witness intimidation schemes documented in recent employment litigation. After Plaintiff refused to sign a severance agreement waiving claims against Gowl personally, Gowl unleashed a campaign of harassment and terror that included hiring

[2] "MDMA (an abbreviation of 3,4-methylenedioxymethamphetamine), also called "Molly" or "Ecstasy," is a lab-made (synthetic) drug that has effects similar to stimulants like methamphetamine." *See* National Institute on Drug Abuse, *MDMA (Ecstasy/Molly)*, https://nida.nih.gov/research-topics/mdma-ecstasy-molly#what (last visited Nov. 21, 2025).

retired FBI agent James T. Lewis who illegally impersonated active law enforcement, arriving in black SUVs and flashing credentials to intimidate Plaintiff's friends and family. Compl. at ¶¶ 12, 260-261. Lewis conducted a systematic campaign targeting Plaintiff's support network, including her godparents, her only family in the United States, causing them to cut off contact. Compl. at ¶ 264.

The retaliation escalated to technical harassment, including sabotage of employment opportunities with job offers being revoked after "new information" was provided to prospective employers. Compl. at ¶¶ 265-266. This ongoing campaign demonstrates that disclosure of Plaintiff's identity would expose her to precisely the type of retaliation she is litigating against. The sophisticated nature of Defendants' intimidation efforts involving fake law enforcement credentials, and interference with employment opportunities shows both the resources available to Defendants and their willingness to engage in potentially criminal conduct to silence Plaintiff.

Furthermore, forcing Plaintiff to litigate under her real name would permanently link her identity to the very harassment and assault she is seeking to address, compounding the reputational harm Defendants have already inflicted upon her. Plaintiff should not now have to disclose her identity and subject herself to further public harassment and retaliation—the very injuries she is litigating against—to get justice. Courts have recognized that where the injury being litigated is privacy, proceeding under a pseudonym may be appropriate. *See, e.g., Roe v. Ingraham*, 364 F. Supp. 536, 540-41, n.7 (S.D.N.Y. 1973) (in action challenging, on privacy grounds, the constitutionality of record keeping under a state controlled-substances act, allowing plaintiffs to proceed anonymously and stating: "if plaintiffs are required to reveal their identity prior to the adjudication on the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid."). Here, requiring public identification would achieve exactly

what Gowl's retaliation campaign seeks: to forever link Plaintiff's name with these traumatic events and deter others from coming forward.

**C. Plaintiff Is Particularly Vulnerable To The Possible Harms Of Disclosure**

Plaintiff is particularly vulnerable to the possible harms of disclosure because of the stigma she will face if her identity as a sexual abuse victim and survivor is made public. *See AMDA, Inc.*, 2016 U.S. Dist. LEXIS 23001, at *3 (noting the "obvious harms of disclosing the identity of a plaintiff bringing allegations of sexual assault") (citation omitted); *Doe No. 2*, 242 F.R.D. at 196 (acknowledging that matters involving sexual assault are of the "utmost intimacy"). As an immigrant who recently obtained U.S. citizenship, she has limited family support in the United States and a small community of friends whom Gowl's investigators have already targeted. Compl. at ¶¶ 55, 264. The fake FBI investigation caused her godparents, her primary family support in America, to cut off contact with her. Compl. at ¶ 264.

Additionally, Plaintiff suffers from clinically diagnosed Chronic Post-Traumatic Stress Disorder and Major Depressive Disorder, Severe, Without Psychotic Features, as a direct result of Defendants' conduct. Based on the evaluation, Dana Legrande, a Licensed Clinical Social Worker, concluded that "Ms. Doe meets the diagnostic criteria for Chronic Post-Traumatic Stress Disorder (F43.12) and Major Depressive Disorder, Severe, Without Psychotic Features (F32.2)." Legrande Decl. at ¶ 6. Ms. Legrande reports that Plaintiff "presents with persistent hypervigilance, intrusive recollections, and significant physiological reactivity to trauma reminders" and "also experiences severe anxiety and engages in avoidance of situations that trigger reminders of her trauma." Legrande Decl. at ¶ 7. In addition, Plaintiff "suffers from depressive symptoms, including hopelessness, impaired concentration, and diminished ability to function in daily life," and "[t]hese symptoms have been chronic and long-standing." Legrande Decl. at ¶ 8. Ms. Legrande explains

that Plaintiff's "conditions are highly sensitive to destabilization, particularly when she faces situations involving loss of control, exposure, or the possibility of being identified in connection with her trauma." Legrande Decl. at ¶ 9. Based on her treatment of Plaintiff and extensive experience with trauma survivors, Ms. Legrande opines that "publicly identifying her in this litigation would cause substantial psychological harm." Legrande Decl. at ¶ 10. She warns that "[l]osing anonymity would introduce an overwhelming stressor that would likely trigger an acute worsening of her PTSD symptoms" and "would also intensify her depressive symptoms." Legrande Decl. at ¶ 11. Ms. Legrande notes that "[e]ven discussing the possibility of being publicly identified has already produced heightened anxiety and emotional dysregulation during therapy sessions." Legrande Decl. at ¶ 12. Ms. Legrande concludes that "allowing Ms. Doe to proceed under a pseudonym is medically necessary" because "[p]ublic identification would pose a substantial and foreseeable risk of emotional decompensation and would disrupt her treatment." Legrande Decl. at ¶ 17. She emphasizes that "[m]aintaining Ms. Doe's anonymity is essential to protecting her psychological stability and ensuring the continuity of her care." Legrande Decl. at ¶ 18.

"The risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital, LLC*, 18-cv-1769 (ER), 2019 U.S. Dist. LEXIS 55860, at *11 (S.D.N.Y. Mar. 31, 2019). "In *Doe v. Smith*, [105 F. Supp.2d 40, 43 (E.D.N.Y. 1999)], the court allowed the plaintiff to proceed anonymously after she provided specific evidence from medical professionals predicting that revelation of her identity would likely 'cause psychological and emotional pain so intense that it would threaten her stability, her safety, and even her life.'" *Doe*, 2019 U.S. Dist. LEXIS 55860, at *11. The risk of additional injury that identification would pose, weighs heavily in favor of granting Plaintiff's motion to proceed anonymously.

Plaintiff's vulnerability is compounded by specific cultural and immigration factors that Gowl deliberately exploited. As someone from a "conservative African culture where women who experience sexual assault are often blamed, shamed, and silenced," Plaintiff faces unique stigmatization that extends beyond the general harm faced by sexual assault survivors. Compl. at ¶ 184. Gowl weaponized this cultural vulnerability, understanding that disclosure could cost her "reputation, her dignity, even her standing within her own community and family." Compl. at ¶ 184.

Additionally, Gowl exploited Plaintiff's immigration status vulnerability, threatening to make false bomb reports to have her detained and deported. Compl. at ¶¶ 210-211. Her financial dependence was further leveraged through the "Coastal Pools payroll scheme" designed to "protect his much larger investment PAX" while obscuring liability, leaving her professionally isolated and concerned that unemployment could affect her pending U.S. citizenship application. Compl. at ¶¶ 40-48, 162.

The physical manifestations of trauma demonstrate the severity of ongoing harm. Following the assaults, Plaintiff collapsed at a café and was rushed by ambulance to the emergency room, diagnosed with "stress-related polycythemia and GERD intensified by stress." Compl. at ¶ 186. The combination of cultural stigma, immigration vulnerability, professional isolation, and documented physical trauma places Plaintiff in an exceptionally vulnerable position that strongly supports proceeding anonymously.

### D. Defendants Will Not Suffer Prejudice By Allowing Plaintiff To Proceed Under A Pseudonym

Where the plaintiff's identity is known, and allowing anonymity would not "overly burden [d]efendant in discovery nor significantly bias the jury against [him]," courts are reluctant to find prejudice to the defendant. *St. Vincent's Servs.*, 2021 U.S. Dist. LEXIS 256918, at *7 (granting

motion where defendants already knew plaintiff's identity and "will have an uninhibited opportunity to litigate th[e] matter regardless of whether [p]laintiff's identity is publicly disclosed") (citations omitted). *See also EW*, 213 F.R.D. at 112 (granting motion where defendant failed to identify any prejudice in discovery or at trial); *Doe No. 2*, 242 F.R.D. at 198 (no prejudice where plaintiff's identity was known and, "[o]ther than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers"); *Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999) (no prejudice where defendant retained the right to depose all witnesses and obtain all documents, and where plaintiff's anonymity did not limit defendant's rights or public access to a trial); *United Servs. Life Ins. Co.*, 123 F.R.D. at 439 (no prejudice where plaintiff's identity was known and defendant would have "full discovery rights as the case progresses" and would "only be barred from using or disclosing the fruits of its discovery for purposes other than the defense of this action").

Here, Plaintiff's identity is already known to Defendants because Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue on September 25, 2025. Compl. at ¶¶ 16-17. Therefore, permitting her to protect her identity from public disclosure will not prejudice Defendants. *See Doe v. Gong Xi Fa Cai, Inc.,* 2019 U.S. Dist. LEXIS 114919 at *4-5 (S.D.N.Y. Jul. 10, 2019) ("The previous complaint Plaintiff filed with the [EEOC], that was served on [d]efendants, includes [plaintiff's] name. . . Where, as here, [d]efendants know Plaintiff's name, there is no prejudice to [defendants'] ability to conduct discovery") (internal quotations omitted). Defendants will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is publicly disclosed. Further, the use of a protective order will permit Defendants to conduct discovery so long as third parties agree to

abide by the confidentiality of Plaintiff's full legal name. Thus, permitting Plaintiff to proceed anonymously will not result in prejudice to Defendants. Plaintiff seeks only to protect her identity from the public and prevent Defendants from disclosing her private and personal information through filings in this case.

The corporate structure that Defendants created with the "Coastal Pools payroll scheme" designed to obscure liability while Plaintiff performed work exclusively for PAX and New State demonstrates that they have already engaged in deliberate obfuscation of their true relationship with Plaintiff, undermining any claim that anonymity would somehow prejudice their defense. Compl. at ¶¶ 40-48.

**E. <u>There Is No Public Interest Requiring Disclosure</u>**

New York public policy strongly supports protecting the anonymity of sexual assault and harassment victims. As acknowledged by the court, “many states in this country, including New York, have enacted laws to protect the anonymity of sexual assault victims.” *Doe No. 2*, 242 F.R.D. at 196, *citing* N.Y. Civil Rights Law A § 50-b. “Upon approving New York's rape shield law, then Governor Mario Cuomo stated, ‘sexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy.’” *Id.*, *citing* 1991 McKinney's Sessions Laws of N.Y., at 2211-12. Thus, the public “has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.” *Doe No. 2*, 242 F.R.D. at 195, *citing Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting anonymity to sexual assault victim). *See also St. Vincent's Servs.*, 2021 U.S. Dist. LEXIS 256918, at *7 (finding that the public interest weighs in favor of anonymity; “By requiring [p]laintiff to disclose

his HIV status, the Court risks 'chilling…others who face discrimination based on their highly stigmatized characteristics from seeking judicial relief.") (citation omitted).

The institutional nature of the harassment at PAX, where executives like Shaun Vasavada witnessed and laughed at Gowl's inappropriate comments rather than intervening, demonstrates the broader pattern of enabling that transformed individual misconduct into corporate culture failure. Compl. at ¶¶ 268-271. Rather than requiring disclosure to serve the public interest, this case demonstrates how powerful executives can create cultures of impunity where harassment thrives. Protecting Plaintiff's anonymity serves the public interest by encouraging other victims to come forward without fear of the type of sophisticated retaliation campaign documented here, while still allowing full public scrutiny of the systemic failures that enabled such extensive abuse.

Accordingly, in this case, the public interest would be served by permitting Plaintiff to proceed anonymously. Allowing Plaintiff to pursue justice while maintaining necessary protections for her mental and emotional health serves the broader public interest in encouraging victims of sexual harassment and assault to seek legal redress. Conversely, requiring disclosure here would not only stifle Plaintiff's attempt to pursue justice while protecting overall health, it would also serve to deter other victims of workplace sexual harassment and assault from seeking justice, contrary to the public interest in encouraging reporting of unlawful actions.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to proceed under the pseudonym "Jane Doe," to prohibit Defendants from disclosing Plaintiff's identity to the public, and to grant any other relief the Court deems necessary and just.

Dated: New York, New York
November 25, 2025

Respectfully submitted,

Bennitta Joseph, Esq.
**JOSEPH & NORINSBERG, LLC**
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022